IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**HECTOR GONZALEZ JIMENEZ,**           **CASE NO. 2:07-cv-819**
                                       **CRIM. NO. 2: 03-cr-079**
                                       **JUDGE SARGUS**
           **Petitioner,**             **MAGISTRATE JUDGE KEMP**

**v.**

**UNITED STATES OF AMERICA, Warden,**

           **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255. This matter is before the Court pursuant to its own motion under Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

This action involves petitioner's underlying criminal convictions on two counts of conspiracy to distribute and possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §§841(a)(1), (b)(1)(A)(ii), and 846 pursuant to the terms of his negotiated guilty plea. On April 22, 2004, he was sentenced to 121 months incarceration on both of his criminal cases, such sentences to run concurrently to each other, plus five years supervised release. He forfeited the property described in count three of Criminal Case No. 2:03-cr-079 to the government. Doc. Nos. 29, 43. Petitioner did not appeal. On May 4, 2004, judgment was entered. Doc. No. 44. More than three years later, on August 21, 2007, petitioner filed the instant *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255. Petitioner requests the

Court to reduce his sentence upon his acceptance of a final deportation order. He asserts that he is being denied due process and equal protection because he is ineligible to be housed at a minimum security prison, or for the prison's drug treatment program or work release, and unable to serve any of his sentence in a halfway house because he is not an American citizen. Petitioner further asserts that he thereby is unconstitutionally subject to a harsher sentence and prison conditions than American prisoners.

Petitioner brings this action under 28 U.S.C. §2255; however, the Court notes that challenges to the execution of a prisoner's sentence under 28 U.S.C. §2241 must be brought in the judicial district of the prison where the petitioner is housed. *Griffin v. Herrera,* 212 F.Supp.2d 707, 709 (E.D. Michigan 2002), citing *Charles v. Chandler*, 180 F.3d 753 (6th Cir. 1999); *Baldwin v. United States*, 412 F.Supp.2d 712, 715 (N.D. Ohio 2005), citing *United States v. Peterman,* 249 F.3d 458, 461 (6th Cir. 2001); *see also Hacker v. Federal Bureau of Prisons*, 450 F.Supp.2d 705, 709 (E.D. Michigan 2006)(challenge to Bureau of Prison regulations denying prisoner halfway house eligibility properly brought under §2241); *United States v. Recinos-Gallegos*, 151 F.Supp.2d 659 (D.Md. 2001)(equal protection challenge to alien's ineligibility for prison programs properly brought under §2241), citing *United States v. Acevedo,* 246 F.3d 682, 2001 WL 280485 (10th Cir.2001).

That said, at least one federal district court has concluded that claims like those raised herein are not properly brought under 28 U.S.C. §2241. *See Minh v. United States*, 2006 WL 2444085 S.D. Georgia, August 22, 2006):

> Petitioner, a deportable alien, argues that the Bureau of Prisons ("Bureau") has subjected him to more severe conditions of confinement than those faced by United States citizens by housing him at McRae, which according to Petitioner is a facility reserved for

2

prisoners who are likely to be deported. Pet., p. 5. Petitioner states that, because of his status as a deportable alien, he is ineligible for a variety of prison programs, including work programs, educational opportunities, and drug abuse treatment programs, as well as transfer to a halfway house. *Id.* at 19-24. Petitioner also argues that his alienage prevents him from receiving consideration for early release. *Id.* at 23.

\*\*\*

According to Petitioner, these collateral consequences of his alienage were not taken into account at his sentencing, and he is entitled to a sentence reduction.

Despite Petitioner's attempt to cast his petition as challenging the "execution" of his sentence, *see* Pet., p. 7, §2241 is the wrong procedural vehicle for most-if not all-of his claims. Petitioner's chief argument is that, if the sentencing court had been aware of the collateral consequences of his alienage, it would have given him a shorter sentence. *Id.* at 5-7. As relief, Petitioner seeks a sentence "adjustment." *Id.* at 8; *see also id.* at 28-30. In essence, Petitioner argues that he is entitled to be resentenced and granted a downward departure based upon his alien status. *See id.* at 25-26.

Simply put, Petitioner is challenging the fundamental validity of his sentence, not its execution. Such claims are properly brought in a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. §2255.

\*\*\*

[T]o the extent Petitioner is contesting the conditions of his confinement, such claims are not properly brought under § 2241. The petition for habeas corpus is available to challenge the fact or duration of one's confinement, not the conditions of confinement. *Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973). Stated another way, "the sole function of habeas corpus is to provide relief from unlawful imprisonment or custody, and it cannot be used for any other purpose." *Cook v. Hanberry,* 592 F.2d 248, 249 (5th Cir.1979) ( *per curiam* ).

Here, Petitioner disputes the Bureau's use of a detainer from the Bureau of Customs and Immigration Enforcement ("BICE") in determining his eligibility for prison programs or early release. *See*

> Pet., p. 22. Claims of this sort are normally brought in a civil rights action, not a petition for writ of habeas corpus. *See, e.g., Stevens v. Heard,* 674 F.3d 320, 323 (5th Cir.1982) (state prisoner's complaint challenging "the practice of considering any detainers in determining eligibility for prison programs" properly brought under 42 U.S.C. § 1983). That said, the Court recognizes that other courts have allowed federal prisoners to bring similar claims in § 2241 petitions. *See, e.g., United States v. Tamayo,* No. 04-2307, 162 Fed. Appx. 813, 815, 2006 WL 52792, at *2 (10th Cir. Jan. 11, 2006) (considering alien's "equal protection" challenge to "execution" of his sentence under §2241 without assessing whether claim was exhausted).

*Id.; Chau v. United States,* 2006 WL 2443351 (S.D. Ga. August 18, 2006)(same); *Pham v. Pugh*, 2006 WL 3091437 (S.D. Ga. October 27, 2006)(prisoner's claim that his sentence should be reduced because he is ineligible for drug treatment or halfway house due to alien status properly brought "in a civil rights complaint filed pursuant to *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388 (1971)).

However, construing petitioner's allegation that he is entitled to a sentence reduction because he received a more severe sentence due to his alien status as raising an equal protection claim, and assuming further that such issue is properly before the Court in these §2255 proceedings, such claim is, in any event, without merit. As discussed by the United State District Court for the Southern District of Georgia:

> [I]nmates do not have any federal constitutional right to participate in rehabilitative programs.[FN5] Nor does an inmate have any constitutionally protected interest in a particular housing assignment or transfer to a particular prison. *See, e.g., McKune v. Lile* 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Meachum v. Fano,* 427 U.S. 215, 225 (1976) (no right to incarceration at any particular prison); *but see Wilkinson v. Austin,* 545 U.S. 209, __, 125 S.Ct. 2384, 2395 (2005)(Ohio prisoners had state-created liberty interest in avoiding assignment to "supermax" prison under the Fourteenth Amendment).[FN6] In sum, Petitioner has not shown that his

Fifth Amendment due process rights have been violated.

FN5. *See, e.g., Moody v. Daggett,* 429 U.S. 78, 88 n. 9 (1976) (Federal prisoners have no due process right to eligibility for rehabilitative programs.); *Murdoch v. Washington,* 193 F.3d 510, 513 (7th Cir.1999) (no protectible liberty or property interest in attending rehabilitation program); *Wishon v. Gammon,* 978 F.2d 446, 450 (8th Cir.1992)(no right to educational or vocational opportunities); *Canterino v. Wilson,* 869 F.2d 948, 952-54 (6th Cir.1989) (no liberty interest in inmate classification or eligibility for work programs); *Hernandez v. Johnston,* 833 F.2d 1316, 1318 (9th Cir.1987) (no right to particular inmate classification or eligibility for rehabilitative programs); *Pugliese v. Nelson,* 617 F.2d 916, 923 (2d Cir.1980) (same); *Battle v. Anderson,* 564 F.2d 388, 403 (10th Cir.1977) ("[A]n inmate does not have a federal constitutional right to rehabilitation."); *Lyle v. Sivley,* 805 F.Supp. 755, 759-60 (D.Ariz.1990) (holding that Due Process Clause does not give federal prisoners a protected right to participate in drug treatment programs).

FN6. The Supreme Court's recent decision in *Wilkinson* is not instructive in the instant case. In *Wilkinson,* the Supreme Court held that Ohio prisoners had a Fourteenth Amendment liberty interest in avoiding assignment to a special "supermax" prison-the only one of its kind in Ohio-in which inmates' lives were closely controlled and monitored, visitation was rare and occurred only through glass walls, and "inmates were deprived of almost any environmental or sensory stimuli and of almost all human contact." 545 U.S. at __, 125 S.Ct. at 2389. Placement in the prison lasted indefinitely, and prisoners otherwise eligible for parole lost their eligibility while incarcerated at the prison. *Id.* Petitioner has not shown that assignment to McRae poses an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" comparable to that considered by the Supreme Court in *Wilkinson. Id.* at 2394 (quoting *Sandin v. Conner,* 515 U.S. 474, 483-84 (1995)).

Furthermore, the Bureau's use of BICE detainers in deciding prisoners' eligibility for prison programs and early release does not offend equal protection principles. Of note, courts have routinely upheld the Bureau's consideration of BICE detainers in making classification decisions regarding inmates, including such issues as security level and eligibility for prison programs.[FN7] ... Petitioner's argument that aliens are categorically denied transfers to halfway houses is misleading.... [T]he Bureau excludes *all* inmates-not just

aliens-who are subject to detainers from participation in community-based treatment programs. *McLean v. Crabtree,* 173 F.3d 1176, 1185 (9th Cir.1999). The "detainer exclusion," which is based upon the rationale that prisoners with detainers pose an increased flight risk, does not single out aliens and does not violate the Equal Protection Clause. *Id.*

FN7. *See, e.g., Franklin v. Berry,* 909 F.Supp. 21, 27-28 (D.D.C.1995)(upholding Bureau's reliance upon detainers in assigning security classifications to aliens); *Limas v. McNary,* 799 F.Supp. 1259, 1263 (D.Mass.1992)(Bureau's decision to deny deportable aliens prerelease transfer to minimum security institutions did not implicate any constitutional right); *Isaraphanich v. Coughlin,* 715 F.Supp. 119, 120-21 (S.D.N.Y.1989)(Bureau's reliance on detainers to deny aliens access to prison programs did not violate the Equal Protection Clause); *Fernandez-Collado v. I.N.S.,* 644 F.Supp. 741, 744 (D.Conn.1986)("Petitioner has neither a legitimate statutory nor constitutional entitlement to those prison programs from which he may be denied access as a result of the detainer."), *aff'd* 857 F.2d 1461 (2d Cir1987).

... The Bureau does not deny aliens participation in substance abuse treatment programs; rather, the Bureau denies aliens subject to BICE detainers consideration for early release on account of their completion of a residential drug abuse treatment program. *See* 28 C.F.R. §550.58(a)(1)(I). Of note, the Bureau clearly possesses the power to categorically exclude inmates from consideration for early release. *See Lopez v. Davis,* 531 U.S. 230, 239-44 (2001) (upholding a Bureau regulation categorically excluding, based upon its general discretion under the statute to grant or deny early release, prisoners convicted of otherwise nonviolent offenses that involved use of a firearm). Furthermore, the Bureau may aim such an exclusion at deportable aliens if it has a rational basis for its decision. *See Mathews v. Diaz,* 426 U.S. 67, 77 (1976).

That said, Petitioner's ineligibility for sentence reduction is actually a consequence of the "detainer exclusion" explained above. The Bureau does not allow inmates who are ineligible for community-based treatment to receive consideration for early release-irrespective of whether they complete a substance abuse treatment program. 28 C.F.R. § 550.58(a)(1)(v). As noted above, all inmates with detainers-not just deportable aliens-fall into this category. The Bureau's decision to link consideration for early release with eligibility for

> community-based treatment is rational and has been upheld by every court to consider the issue. *See, e.g .*, *Rublee v. Fleming,* 160 F.3d 213, 215-18 (5th Cir.1998).
>
> Finally, Petitioner is quite correct that his deportability prevents him from participating in Federal Prison Industries ("UNICOR") work assignments. *See* 28 C.F.R. § 345.35(a). Nevertheless, the Bureau clearly has a rational basis for excluding deportable aliens from consideration for rehabilitative programs, including UNICOR assignments. As one court has explained:
>
> The [Bureau] does not act in violation of Fifth Amendment equal protection standards in providing programs for prisoners who have a lawful right to remain in the country, whose rehabilitation is of interest to this country and the policy of this society, and in not providing programs for deportable aliens who have no right to be in the country and whom Congress has an interest in deterring from entering or returning.... There is no equal protection violation in different treatment of aliens as to rehabilitation and other programs. The United States may treat deportable aliens and citizens differently. There is no primary interest in reformation of deportable persons. That's an interest of the country to which they may be deported. Deterring further illegal reentry is a legitimate interest of the United States as well as saving expenses. Also, special security may be justified to avoid flight to the border. In the case of American citizens, or lawful residents, reformative programs are a worthy correctional consideration.
>
> *Ruiz-Loera v. United States,* No. 00-CV-323-K, 2000 WL 33710839, at *2 (D. Utah June 23, 2000) (citations omitted); *see also Tamayo,* 162 Fed. Appx. at 816, 2006 WL 52792, at *3 ("[T]here is a rational basis to deem deportable aliens, who will be sent out of the country after the term of their sentence, ineligible for programs geared toward rehabilitating prisoners who will re-enter society after their release from confinement.").

*Chau v. United States, supra*, 2006 WL 2443351.

Likewise, petitioner's request for a sentence reduction based on his alien status and ineligibility for drug treatment or transfer to a halfway house or a community correctional center fails to raise an issue justifying federal habeas corpus relief. To obtain relief under §2255, a prisoner

must establish that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell,* 428 U.S. 465, 477 n. 10 (1976).

> To prevail on a §2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *See Watson v. United States,* 165 F.3d 486, 488 (6th Cir.1999) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 637-38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)).
>
> To prevail on a §2255 motion alleging non-constitutional error, the petitioner must establish a " 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *Watson,* 165 F.3d at 488 (quoting *United States v. Ferguson,* 918 F.2d 627, 630 (6th Cir.1990)) (citing *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)); *accord Grant v. United States,* 72 F.3d 503, 506 (6th Cir.), *cert. denied,* 517 U.S. 1200, 116 S.Ct. 1701, 134 L.Ed.2d 800 (1996).

*McNeil v. United States,* 72 F.Supp.2d 801, 803 (N.D.Ohio 1999). Petitioner cannot meet this burden here.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation,* that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the

objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

```
/s/ Terence P. Kemp
United States Magistrate Judge
```